## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**CONRAD MORNAY, ET AL.**                                          **CIVIL ACTION**

**VERSUS**                                                                      **NO. 07-5274**

**TRAVELERS INSURANCE, ET AL.**                            **SECTION "K"(2)**

## ORDER AND REASONS

Two motions to dismiss are before the Court.  Defendant Standard Fire Insurance

Company's ("Standard Fire") has filed a Motion to Dismiss (Rec. Doc. 31) ("Mot. Dismiss").

Putative class plaintiffs, Conrad and Jacqueline Mornay, have opposed this motion (Rec. Doc.

38) ("Opp. Dismiss").  Defendant Xactware, Inc., ("Xactware") has also filed a Motion to

Dismiss and to Strike the Second Amended Complaint (Rec. Doc. 25) ("Mot. Strike").  Plaintiffs

have opposed this motion as well (Rec. Doc. 39) ("Opp. Strike").

## I.  BACKGROUND

The present action presents very similar factual allegations as another case pending

before this Court, *Schafer v. State Farm Fire & Casualty Company*, Civ. A. No. 06-8262.

Plaintiffs were customers of Standard Fire and their home was insured through Standard Fire

during Hurricane Katrina.  They claim that Standard Fire, in performing the insurance

adjustment on their home, inappropriately underestimated the damages caused by the hurricane.

First Amended Complaint ¶ 10 (Rec. Doc. 3) ("First Am. Compl.").  They alleged that Standard

Fire, along with other insurance companies, used a program called Xactimate, produced by

Xactware Solutions, Inc. ("Xactware"), for the purposes of making insurance adjustments to customer homes.  Xactware also provided a database of local prices for various replacement materials that insurers used to adjust insurance claims.  The Plaintiffs assert that there was a conspiracy among insurers to "horizontally fix the prices of repair services utilized in calculating the amount(s) to be paid under the terms" of insurance contracts.  First Am. Compl. ¶ 36.  This alleged conspiracy included insurance companies and Xactware.  First Am. Compl. ¶ 36.  As stated in the complaint, "[t]he purpose of the conspiracy was to depress the amount paid out under the terms of the insurance contracts to below market prices and deprive Louisiana insureds of the actual cash value and/or replacement value of the damaged property."  First Am. Compl.¶ 39.  Overall, Plaintiffs allege claims of breach of contract against insurer Standard Fire, horizontal price fixing against all Defendants, intentional misrepresentation and fraud against all Defendants.  First Am. Compl. ¶¶ 75-94.  Further, Plaintiffs claim that Xactware is liable for intentionally understating the cost of replacement items, for conspiring with insurers to violate the insurance policy contract terms, or for designing a defective product under the Louisiana Products Liability Act ("LPLA").  First Am. Compl. ¶¶ 95-97.  This LPLA products liability claim was dismissed by stipulation, however.  (Rec. Doc. 54).

In November 2007, the Plaintiffs amended their complaint again in a Second Amended Complaint (Rec. Doc. 14) ("Sec. Am. Compl.").  This amended complaint only added further allegations regarding the horizontal price fixing conspiracy.  The Plaintiffs claimed that Xactware is a "wholly-owned subsidiary of ISO," Insurance Services Office, Inc., which is "owned by and/or otherwise comprised of, the major insurance companies," including Standard Fire.  Sec. Am. Compl. ¶ 84-B(D).  Through Xactware, Standard Fire and other defendants were

allegedly able to set up an "ostensible 'independent' and 'objective' benchmark for reasonable cost pricing" and that this action has resulted in a scheme that forced "[t]he purchaser [to] pay[] too much for the good or service (*i.e.* the coverage afforded under the policy)."  Sec. Am. Compl. ¶ 84-B(D).


## II.  STANDARD FIRE'S MOTION TO DISMISS

### A.  Contentions of the Parties

Standard Fire moves to dismiss on the following four grounds.  First, it claims that this Court has already held that the Plaintiffs do not state a claim under the Louisiana Anti-Monopolies Act in *Schafer v. State Farm Fire & Cas. Co.*, 507 F. Supp. 2d 587, 589-91 (E.D. La. 2007) (hereinafter "*Schafer I*").  Standard Fire asserts that the Plaintiffs still do not adequately allege a price fixing conspiracy through their assertions of parallel reliance on Xactimate, the ability of all companies to monitor insurance data, the use of the same consultant by various insurers, and participation in industry organizations.  Second, Standard Fire alleges that the payment of cash value to the Plaintiffs prior to this litigation shows that it has actually complied with its contractual duties, and that Plaintiffs cannot recover under Louisiana "bad faith" statutes (La. Rev. Stat. 22:658 and 22:1220) because they have not provided "a well-pled breach of contract claim."  Mot. Dismiss at 17-18.

Standard Fire further claims that the Complaint does not adequately allege a claim for intentional misrepresentation because Plaintiffs concede that they did not rely on either Xactware's or Standard Fire's representations, thus no reliance has been pleaded.  Mot. Dismiss at 19.  Standard Fire asserts further that the Plaintiffs have failed to plead any intent to deceive or

that any misrepresentations were made by Standard Fire.  Mot. Dismiss at 22-23.  Finally,

Standard Fire states that the Plaintiffs' complaint should be stayed pending the appraisal that was

invoked by Standard Fire under the terms of the contract policy on January 25, 2008.  Mot.

Dismiss at 23.

Plaintiffs reply that their claims should not be dismissed because they plead a "plausible"

set of facts that support their case.  First, they generally assert that their horizontal price fixing

allegations should remain because the allegations set forth here are more detailed than in

*Schafer*.  The Plaintiffs note that they plead additional facts, and that these facts set forth an

explanation of why the alleged conduct is anti-competitive.  These facts include: (1) Xactware is

owned by an "ISO", which is a combination of insurance companies including Standard Fire; (2)

the Defendant Insurers act together to manipulate the data; (3) State Farm's and Standard Fire's

pricing lists were identical; (4) Xactware pricing lists were increased a small percentage after

Katrina instead of maintaining market values.  Opp. Dismiss at 2.  These facts, taken *as a whole*,

should amount to adequate price-fixing allegations according to Plaintiffs.

Plaintiffs further claim that they are not required to negate an independent action by the

insurers where they have offered direct evidence of combination.  Opp. Dismiss at 4.  Moreover,

insurance companies are the *de facto* purchasers of construction goods and services, and as such

any conspiracy to deflate prices is a *per se* antitrust violation.  Opp. Dismiss at 8.  As to the fraud

claims, Plaintiffs alleged that their claims have already been approved in the *Schafer* case.  Opp.

Dismiss at 9.  They note that they have shown that the Defendants are the cause-in-fact of their

harm, also cause-in-fact can be established in ways other than reliance under Louisiana law, and

to the extent reliance is required, it has been adequately pleaded.  Moreover, the Plaintiffs state

that Defendants should not confuse the individual claims with class claims because consideration of the class claims is inappropriate at this time.  As to the breach of contract and "bad faith" claims, the Plaintiffs again claim that, if the Defendants indeed did collude together to underpay customers, that would result in bad faith.  Opp. Dismiss at 10-11.  Finally, Plaintiffs argue that this Court should not dismiss or stay the case pending Defendant's request for appraisal.  The Plaintiffs point out that appraisal is not a condition precedent to the filing of the suit, and will not moot the antitrust claims or class claims.  Opp. Dismiss at 12.

Standard Fire notes in its reply that the Plaintiffs' antitrust allegations fail for the same reason as in *Schafer* – the plaintiffs have failed to allege that the "anticompetitive" actions were motivated by anything but "rational and competitive business strategy."  The fact that the Insurance Services Organization ("ISO") owns Xactware is of no importance here because ISO bought Xactware on August 10, 2006, after the hurricane and after Standard Fire made the final payments to Plaintiffs. "  Reply Mot. Dismiss at 4-7.

### B.  Analysis

The present case appears to follow closely with this Court's prior opinion in *Schafer*. *Schafer v. State Farm Fire & Cas. Co.*, 507 F. Supp. 2d 587, 589-91 (E.D. La. 2007) (hereinafter "*Schafer I*").  In the present case, it appears that the claims regarding negligence and fraud are nearly identical to those that were previously considered in *Schafer*.  Relevant issues, therefore, concern price-fixing allegations, and the possible option to stay or dismiss in favor of appraisal.

### 1.  Price-Fixing Claims

*Schafer I* considered the first motions to dismiss the plaintiffs' first amended class action complaints.  First, they claimed that the defendants had conspired in a horizontal price-fixing scheme to "depress the amount paid out under the terms of the insurance contracts below market prices."  First Am. Compl. ¶ 36.  In this Court's opinion dated August 22, 2007, the plaintiffs' claims were dismissed in part.  With regards to Plaintiffs' state law horizontal price-fixing claim, this Court held that under the Supreme Court's *Twombly* decision the plaintiffs "[did] not present the necessary factual predicates that plausibly suggest the existence of a conspiracy."  *Id.* at 597.  The *Twombly* standard requires more than "an allegation of parallel conduct and a bare assertion of conspiracy."  *Bell Atlantic Corp. v. Twombly*, --- U.S. ----, 127 S.Ct. 1955, 1966, 167 L.Ed.2d 929 (2007).  Instead, plaintiffs must plead at least "enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement."  *Id.*  The plaintiffs in *Schafer* claimed that Xactware worked "closely . . . with many insurance companies" and agreed to "fix the prices utilized in calculating the amount(s) to be paid under the terms of [the insurance contracts]" in order to "reduc[e] the payout" to customers.  *Schafer*, 507 F. Supp. 2d at 596-97.  They also alleged that State Farm knew what other insurance companies were using Xactimate and acted conscious of this fact.  *Id.*  This Court found, however, that these allegations of State Farm acting according to its profit motive did not suggest a price-fixing conspiracy.  *Id.*

Here, the Plaintiffs have attempted to allege additional facts, including:  (1) Xactware is owned by an "ISO", which is a combination of insurance companies including Standard Fire; (2) the Defendant insurers act together to manipulate the data; (3) State Farm's and Standard Fire's pricing lists were identical; (4) Xactware pricing lists were increased a small percentage after Katrina instead of maintaining market values.  Opp. Dismiss at 2.  According to the Plaintiffs,

these facts, taken as a whole, should amount to adequate price-fixing allegations.

Evaluating these allegations, Plaintiffs have failed to sufficiently allege an antitrust conspiracy.  The fact that several insurers' price lists were identical suggests that they commonly used Xactware, which is not surprising considering that the Louisiana Insurance Department specifically suggested Xactware to be an option for pricing databases post-Hurricane Katrina. *See Schafer*, 507 F. Supp. 2d at 590 n.3 ("Although the allegations suggest an insidious motive on the part of State Farm, the Louisiana Department of Insurance promulgated an emergency rule after Hurricane Katrina requiring that parties use the Xactware software 'or similar reputable sources' as a starting point in mediating adjustment disputes.") (citation omitted). Allegations that Xactware did not raise their price lists significantly after Katrina does not suggest collusive activity, and neither does the barebones assertion that insurers acted together to manipulate price data.

The best possible allegation of price-fixing is that ISO, a conglomerate of insurance companies, owned and operated Xactware, thus suggesting that the insurance companies directly controlled Xactware.  However, Plaintiffs' naked assertion has been refuted by Standard Fire, which has established that ISO did not acquire Xactware until August 10, 2006, well after Hurricane Katrina and after the final payout was made to the Mornays in this case.  Without any control by the insurance companies through ISO over Xactware, Plaintiffs are left with no plausible allegation that supports their allegation of a price-fixing conspiracy.  Consequently, under authority of *Twombly* and following this Court's opinion in *Schafer*, Plaintiffs' price-fixing conspiracy allegations must be dismissed.  Considering that Plaintiffs ostensibly have had several opportunities to plead this claim between the *Schafer* and *Mornay* litigations, in which

7

the both the operative facts and Plaintiffs' counsel are the same, this dismissal will be made with prejudice.

### 2. Appraisal

Standard Fire also claims that the present case should be dismissed or stayed in lieu of appraisal, a right provided for within the parties' original contract.  It cites *Newman v. Lexington Insurance Company*, Civ. A. No. 06-4668, 2007 WL 1063578 (E.D. La. Apr. 4, 2007), a case similar to this one before Judge Africk, in which the plaintiffs sought payment from their insurance company for Hurricane Katrina damage.  The plaintiffs in that case also had filed a class action, claiming that their insurance company "deliberately priced items below their market value and denied payment for industry standard items."  *Id.* at *1.  The defendant insurance company invoked the appraisal process, and sought dismissal, or alternatively, a stay.  The court rejected the plaintiffs' claim that appraisal was futile and noted that there was no evidence that the insurance company was aware of the disagreement on appraisal prior to filing of the complaint.  *Id.* at *3.  Judge Africk also found that the contract contained no time limit for invoking appraisal, and therefore the company only had to invoke appraisal within a "reasonable time" after being made aware of disagreement between the parties.[1]  *Id.* at *4.  Judge Africk addressed the facts of the case, and found that because the insurance company involved appraisal two months after having been made aware of the disagreement as to the adjustment, appraisal

---

[1] Judge Africk noted one case in which a delay of eight months in invoking appraisal was deemed reasonable.  *Kester v. State Farm Fire & Cas. Co.*, 726 F. Supp. 1015, 1019-20 (E.D. Pa. 1989) (finding eight months reasonable where the only prejudice she alleged was "the continued existence of her court action").

was made within a reasonable period.  *Id.*  Considering, moreover, that nothing in the contract prevented appraisal from being invoked after filing of a lawsuit, the court found that a stay was appropriate.  As to the class action claim, Judge Africk noted that the plaintiffs had pointed to no evidence as to "why the[y] might suffer prejudice as a result of this process."  *Id.*

In the present case, Plaintiffs do not invoke any kind of prejudice, nor do they argue that the appraisal has been invoked in an unreasonable amount of time.[2]  They admit that appraisal "will only purport to resolve the amount owed under the policy."  Opp. Dismiss at 12.  Plaintiff argue, instead, that appraisal is "not a condition precedent to suit" (that appears undisputed); that appraisal "does not divest the court of jurisdiction" (again, undisputed); and appraisal will not moot the antitrust claims, the class claims, or penalties or attorneys fees.  Opp. Dismiss at 12.  Admittedly, appraisal may not solve some of the claims within the suit.  However, appraisal may solve the most reliable claim of the Plaintiffs: the amount owed them under the policy.  There is also no guarantee that the other claims will be successful, particularly as the class has not yet been certified and the antitrust conspiracy claims have been dismissed, *supra*.  Should Plaintiffs' individual claims be amicably resolved, it would appear likely that the Mornays would no longer have claims that would be typical of their class, and they would not be adequate class representatives.  Fed. R. Civ. P. 23(a)(3), (4); *see Rocky v. King*, 900 F.2d 864, 869 (5th Cir. 1990) ("This Court generally has concurred with the proposition that a purported class action is moot where the named plaintiff's individual claim became moot before class certification."); *see also Richards v. Delta Air Lines, Inc.*, 453 F.3d 525, 529 (D.C. Cir. 2006) (class representative

---

[2]Indeed, the appraisal letter was sent to Plaintiffs on January 25, 2008, (Mot. Dismiss, Ex. D), approximately five months after Standard Fire received notice of the Plaintiffs' claim on the date of the filing of this action, August 30, 2007, (Rec. Doc. 1).

must have some "personal stake" in litigation in order to represent class, although such stake may include "shift[ing] to successful class litigants a portion of those fees and expenses incurred as purported class representative").  Therefore, considering that Plaintiffs' claims could be substantially (or entirely) satisfied through appraisal proceedings, this Court will stay the Plaintiffs' remaining claims against Standard Fire.

## III.  XACTWARE'S MOTION TO DISMISS OR MOTION TO STRIKE

Defendant Xactware filed a Motion to Dismiss or to Strike the First Amended Complaint (Mot. Strike) (Rec. Doc. 25).  Xactware asserts that Plaintiffs' fraud claims against it must be dismissed because (1) Plaintiffs have not alleged reliance on Xactware by Standard Fire, (2) Plaintiffs have not alleged that they relied on Xactware, and (3) Plaintiffs have not alleged that Xactware caused their injuries.[3]  Plaintiffs have opposed Xactware's Motion.  (Opp. Mot. Strike) (Rec. Doc. 39).

The arguments presented by the parties are virtually identical to those in the *Schafer* case. This repetition is rather appropriate; the *Schafer* case involves substantially the same allegations by similarly-situated plaintiffs against the same party, Xactware, and indeed counsel for Plaintiffs and Xactware are the same as in *Schafer*.  Xactware's motion to dismiss in *Schafer* was denied by this Court in an opinion issued on June 11, 2008.  Order & Reasons, Civ. A. No. 06-8262 (E.D. La. June 11, 2008) (Rec. Doc. 96) ("Order").  This Court held that the Plaintiffs had sufficiently pleaded their state law fraud claim under the *Twombly* pleading standard requiring

---

[3]Xactware also joined in Standard Fire's motion to dismiss.  Thus, Xactware's motion is denied insofar as it reiterates Standard Fire's grounds for dismissal.

plaintiff to plead "enough facts to state a claim to relief that is plausible on its face" in order to survive a motion to dismiss." *Bell Atlantic Corp. v. Twombly*, --- U.S. ----, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007).  That opinion explained that the plaintiffs in *Schafer* had adequately pleaded reliance by the insurance company by stating that it received pricing data from Xactware and used the data to adjust the plaintiffs' insurance claims.  Order at 11-12. Plaintiffs had also alleged reliance on their own part because they relied on the estimates received from the insurance companies which were based on Xactware's data, even if the plaintiffs did not know they were actually relying on a third party.  Order at 12 n.2, *quoting Guidry v. U.S. Tobacco Co., Inc.*, 188 F.3d 619, 627 (5th Cir. 1999).[4]  Lastly, the *Schafer* plaintiffs successfully alleged causation, insofar as they alleged that Xactware's allegedly faulty pricing database caused the harm suffered by the plaintiffs, particularly because Xactware knew the insurer would rely on the database.  Order at 13.

Plaintiffs here make similar allegations.  It asserts that Xactware intentionally understated the costs of replacement goods and services "with the knowledge and foreseeable expectation that Insurer and the other insurance companies would rely upon those numbers in the making of

---

[4]As stated in *Guidry* (and iterated in this Court's *Schafer* opinion):

We would expect Louisiana courts to use a standard for intentional misrepresentation involving risk of physical harm similar to the Restatement (Second) of Torts § 310 (1965): "An actor who makes a misrepresentation is subject to liability to another for physical harm which results from an act done by the other or a third person in reliance upon the truth of the representation, if the actor (a) intends his statement to induce or should realize that it is likely to induce action by the other, *or a third person*, which involves an unreasonable risk of harm to the other, and (b) knows (I) that the statement is false, or (ii) that he has not the knowledge which he professes."

*Guidry v. U.S. Tobacco Co., Inc.*, 188 F.3d 619, 627 (5th Cir. 1999) (emphasis added).

unconditional actual case value payments to Plaintiffs." First Am. Compl. ¶ 95. The Complaint further alleges that "Xactware and Insurer knew many policy holders [Plaintiffs] would rely upon the payment provided by Insurer and not seek and additional supplemental payment." First Am. Compl. ¶ 92. These allegations sufficiently establish the reliance prong of the fraud claim. And, Plaintiffs allege that they suffered damage "[a]s a result of Xactware and Insurer's misconduct," specifically through Xactware's "basing its price lists, in whole or in part, on settled claim amounts submitted by Insurer," resulting in lower insurance adjustments. First Am. Compl. ¶¶ 91, 94. As in *Schafer*, these assertions plausibly allege an action against Xactware and Standard Fire. It is certainly possible that Xactware submitted faulty pricing lists that were then used by Standard Fire to provide customers with lower insurance payments than would have otherwise been owed. Thus, at this stage in this litigation, Xactware's motion to dismiss must be denied.

Moreover, as in the *Schafer* case, Xactware seeks to dismiss the class fraud allegations because Plaintiffs assert that "individual questions of 'reliance' or causation are not relevant, as the only conduct at issue is the common class wide reliance of the insurance company." First Am. Compl. ¶ 105. Plaintiffs state that "as to these payments, [Plaintiffs] did not 'rely' on either Xactware or Insurer's 'representations'; they merely received payments which were less than what they should have been." First Am. Compl. ¶ 105. It appears peculiar that Plaintiffs first claim that they relied on the Defendants, and then assert that they did not rely. However, as in *Schafer*, the better explanation is that Plaintiffs are anticipating class certification, and thus they apparently seek to diminish individual issues of reliance. *See* Order at 14, *citing Bell v. Ascendant Solutions, Inc.*, 422 F.3d 307, 310 (5th Cir. 2005) (where fraud on the market theory

12

cannot be utilized, "plaintiff's fraud claims [are] dependent on proving reliance and thus unsuited for aggregation.").  Because these grounds for dismissal concern the class wide claims, as in *Schafer* this Court will refrain from dismissing on grounds at this time, instead reserving this issue for consideration at the class certification stage.

## IV.  CONCLUSION

For the reasons provided herein, accordingly,

**IT IS ORDERED** that Defendant Xactware's Motion to Dismiss (Rec. Doc. 25) is **DENIED**; and

**IT IS FURTHER ORDERED** that Defendant Standard Fire's Motion to Dismiss (Rec. Doc. 31) is **GRANTED IN PART.**  The allegations contained within the Second Amended Complaint concerning price-fixing conspiracy are **DISMISSED**; and

**IT IS FURTHER ORDERED** that this case is **STAYED** pending completion of the appraisal process.

New Orleans, Louisiana, this __13th__ day of June, 2008.

 

**STANWOOD R. DUVAL, JR.**
**UNITED STATES DISTRICT JUDGE**